1  Douglas R. Pahl, OSB No. 950476
   DPahl@perkinscoie.com
2  Stephen A. Raher, OSB No. 95625
   SRaher@perkinscoie.com
3  PERKINS COIE LLP
   1120 NW Couch Street, 10th Floor
4  Portland, Oregon 97209
   Telephone: 503-727-2000
5  Facsimile: 504 346-2222

6
   Attorneys for Debtor
7  Fagerdala USA - Lompoc, Inc.

8

9              UNITED STATES BANKRUPTCY COURT

10               FOR THE DISTRICT OF OREGON

11  In re
                                    |  Case No.  14-34642-tmbll
12  Fagerdala USA - Lompoc, Inc.,   |
                                    |  Chapter 11
13                    Debtor.       |
                                    |  **DISCLOSURE STATEMENT FOR
14                                  |  DEBTOR'S PLAN OF
                                    |  REORGANIZATION (Dated November 14,
15                                  |  2014)**
16

17       **THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE
         BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION.  THE
18       BANKRUPTCY COURT WILL DETERMINE WHETHER THIS DISCLOSURE
         STATEMENT CONTAINS ADEQUATE INFORMATION AT A HEARING TO
19       CONSIDER APPROVAL OF A DISCLOSURE STATEMENT.  THE
         TRANSMISSION OF THIS PROPOSED DISCLOSURE STATEMENT IS NOT A
20       SOLICITATION FOR ACCEPTANCE OR REJECTION OF DEBTOR'S
         PROPOSED PLAN**

21

22

23

24

25

26

PAGE  1-   DISCLOSURE STATEMENT

1    Fagerdala USA - Lompoc, Inc. ("Debtor") submits this Disclosure Statement in

2  connection with its Plan of Reorganization dated November 14, 2014 (the "Plan").  A copy of the

3  Plan is attached hereto as Exhibit A.  Capitalized terms used herein shall have the meanings

4  given to them in the Plan unless otherwise defined herein.  The purpose of this Disclosure

5  Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii)

6  informs creditors and Equity Interest holders of the treatment to be afforded their claims against

7  and equity interests in the Debtor under the Plan, (iii) assists creditors entitled to vote in making

8  informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the

9  Court in determining whether the Plan complies with the provisions of chapter 11 of the

10  Bankruptcy Code and should be confirmed.  The Plan describes how all Claims against and

11  Equity Interests in the Debtor will be resolved, and provides the means by which the Debtor will

12  be reorganized.

13                              **I.       EXECUTIVE SUMMARY**

14                          **A.       Introduction.**

15    On August 18, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief

16  under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  Since then, the Debtor has

17  managed its properties and affairs as a debtor-in-possession.  This Disclosure Statement

18  describes certain aspects of the Plan, the Debtor's business operations, significant events that

19  occurred in the Bankruptcy Case, and related matters.  This executive summary is intended

20  solely as a summary of the distribution provisions of the Plan and certain matters relating to the

21  plan confirmation process.  For a more complete understanding of the Plan, you should read this

22  Disclosure Statement, the Plan, and the exhibits thereto in their entirety.

23                          **B.       Definitions and Plan Supremacy.**

24    All terms defined in the Plan will have the same meanings when used in this Disclosure

25  Statement.  Terms defined in this Disclosure Statement which are also defined in the Plan are

26  solely for convenience and the Debtor does not intend to change the definitions of those terms in

PAGE  1-    DISCLOSURE STATEMENT

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    the Plan.  Furthermore, in the event of any inconsistency between the Plan and this Disclosure

2    Statement, the Plan will control.  The exhibits attached to this Disclosure Statement are

3    incorporated into and are a part of this Disclosure Statement.

4                            **C.      Plan Materials.**

5            The Debtor is mailing the following items to those creditors entitled to vote and certain

6    other parties:

7            1.      A copy of the "Order (I) Approving Disclosure Statement; (II)
                    Fixing The Record Date; (III) Approving the Notice and
8                    Objection Procedures in Respect of Confirmation of the Plan of
                    Reorganization; (IV) Approving Solicitation Packages and
9                    Procedures for Distribution Thereof; and (V) Approving the
                    Form of Ballot and Establishing Procedures for Voting on the
10                   Plan of Reorganization," as entered by the Bankruptcy Court on
                    _____, 2014 (the "Disclosure Statement Order");
11
            2.      The Notice (I) of Approval of Disclosure Statement, (II)
12                   Establishment of Record Date, (III) Hearing on Confirmation of
                    the Plan and Procedures for Objection to Confirmation of the
13                   Plan, and (IV) Procedures and Deadline for Voting on the Plan;

14           3.      This Disclosure Statement as approved by the Court;

15           4.      The Plan;

16           5.      A ballot; and

17           6.      A pre-addressed return envelope.

18           Pursuant to the terms of the Plan, certain Classes of Claims and Equity Interests are

19   entitled to vote.  Enclosed with this Disclosure Statement are a ballot and a pre-addressed

20   envelope for return of the ballot.  The voting procedures are set forth more fully in Article VIII

21   of this Disclosure Statement.  If you did not receive a ballot or if your ballot is lost or damaged,

22   please contact Ann Sandvig at Perkins Coie LLP, 1120 N.W. Couch Street, 10th Floor, Portland,

23   OR 97209, by telephone at (503) 727-2046, by fax at (503) 727-2222, or by email at

24   asandvig@perkinscoie.com.  The Debtor believes that confirmation of the Plan is in the best

25   interests of the Debtor and its creditors, and that creditors should vote to approve the Plan.  You

26   may vote on the Plan by returning the enclosed ballot to the address shown below prior to the

PAGE  2-    DISCLOSURE STATEMENT

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Voting Deadline, which is **5:00 p.m. local time in Portland, Oregon on _____, 2014. Only Ballots received by the Voting Deadline can be counted for purposes of Plan confirmation.**

### D.    The Disclosure Statement Approval

The Bankruptcy Court will consider approval of this Disclosure Statement in accordance with section 1125(f) of the Bankruptcy Code and Bankruptcy Rule 3017 as containing "adequate information" to enable a hypothetical, reasonable investor typical of holders of Claims against the Debtor to make an informed judgment as to whether to accept or reject the Plan at the Confirmation Hearing.  All objections to the approval of this Disclosure Statement should be filed on or before **5:00 p.m. on _____, 2014**.  Approval of this Disclosure Statement will not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

### E.    Confirmation of Plan

The Bankruptcy Court may confirm the Plan if it is approved by creditors holding more than two-thirds in amount and one-half in number of the Claims voted in each impaired Class of Claims under the Plan.

**Objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and a copy served on counsel to the Debtor such that the objection is received on or before 5:00 p.m. on _____, 2014.  The hearing to consider confirmation of the Plan will be held on _____, 2015.**

The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned date and time at the hearing on confirmation, or at any adjournment thereof.

### II.    DISCLAIMERS

THIS DISCLOSURE STATEMENT IS NOT THE PLAN.  THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ COMPLETELY.  FOR THE

PAGE  3-    DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.  NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF FAGERDALA, ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  THIS IS A SOLICITATION BY THE DEBTOR ONLY.  THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF THEIR ATTORNEYS OR ANY OTHER PROFESSIONAL.  PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING THE DEBTOR'S FINANCIAL CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT, BUT PREPARED FROM INFORMATION COMPILED BY THE DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE OF THEIR OPERATIONS.  REASONABLE EFFORTS HAVE BEEN MADE TO ACCURATELY PREPARE ALL FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE INFORMATION AVAILABLE TO THE DEBTOR.  HOWEVER, AS TO ALL SUCH FINANCIAL INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ERROR.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.  CREDITORS AND

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

EQUITY INTEREST HOLDERS SHOULD CONSULT THEIR OWN LEGAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON THEM.

## III.    THE DEBTOR'S HISTORY AND BUSINESS BACKGROUND

### A.    History and Business of the Debtor

The Debtor was organized as a California corporation on April 1, 2003.  The Debtor's sole business activity is holding, managing, and leasing certain real property located in Lompoc, California (the "Property").

In December of 2003, Debtor purchased a fee simple interest in the Property from Pactuco, Inc. and Gowing Leasing.  At the time of the purchase, the Property was used to operate a plastics manufacturing business owned by the Debtor.

In August of 2011, the business was closed and the property leased to Central Plastics & Manufacturing LLC ("Sublessor"), which subleased the Property to Denmat Holdings ("Tenant").  In approximately October 2012, Debtor acquired Sublessor's interest in the governing lease agreement.  Tenant still occupies the Property and is current on its lease obligations.

### B.    Management of Fagerdala.

The following table identifies each of the executive officers and directors of Fagerdala as of the date hereof.

| Name | Position |
|---|---|
| Rex Hansen | President |
| John Ballinger | Vice President |
| Brenda Baker | Secretary |
| Judy Henry | Treasurer |

### C.    Fagerdala Interest Holders.

Fagerdala has one class of common stock, 100% of which is owned by Willamette Holdings, LLC, an Oregon limited liability company.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

**D.      Related Party Transactions**

Maxwell Morgan, LLC ("Maxwell Morgan") is an insider of the Debtor as defined in section 101(31) of the Bankruptcy Code.   Maxwell Morgan was the primary lender to the Debtor and the Debtor's parent and other subsidiary companies.  As part of these lending transactions, Maxwell Morgan held a perfected secured position on all assets of the borrowers, other than real estate.  In August of 2011, Maxwell Morgan lent additional funds to the Debtor under a line of credit; in return for this additional extension of credit, the Debtor granted Maxwell Morgan a lien on the property.  The lien is validly perfected and is junior to Pacific Western Bank ("PWB").  The Plan proposes that Debtor not pay any amounts to Maxwell Morgan on account of Maxwell Morgan's secured Claim until all other Claims have received all payments due under the Plan.

**IV.      THE BANKRUPTCY CASE**

**A.      Commencement of Bankruptcy Case.**

The Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 14, 2014.  No trustee has been appointed, and the Debtor has continued to manage its properties and affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.      Official Committee of Unsecured Creditors.**

The Bankruptcy Code provides for the appointment of an official committee of unsecured creditors in a chapter 11 case to promote the interests of all unsecured creditors.  This committee is generally chosen from the twenty largest unsecured creditors and is appointed by the United States trustee.  No committee was appointed in this Bankruptcy Case.

**C.      Pacific Western Bank**

One of the factors necessitating a chapter 11 filing by the Debtor was notice of nonjudicial foreclosure issued by PWB.  Foothill Independent Bank was a locally owned and operated bank in Lompoc.  The bank provided the lending for the original purchase of the

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1   Property in December of 2003.   PWB acquired this loan sometime prior to 2011.  By June of

2   2011, Debtor was delinquent on its obligations under the loan.  Debtor and PWB subsequently

3   negotiated and executed a forbearance agreement, pursuant to which PWB agreed to forbear

4   from exercising its rights under the PWB Loan Documents, based upon certain payments being

5   made by Debtor.  These payments required by the forbearance agreement were funded by

6   Maxwell Morgan.  The forbearance agreement kept the original maturity date of December 17,

7   2013.  When Debtor did not pay all amounts due under the PWB Loan on the stated maturity

8   date, PWB commenced nonjudicial foreclosure proceedings.

9                              **D.       Postpetition Finances**

10              The operating expenses of the Property are generally paid by Tenant.  Accordingly, since

11   the commencement of the Bankruptcy Case, Debtor has accumulated rent revenue but has not

12   incurred operating expenses or made any cash disbursements.  Debtor expects to incur

13   approximately $60,000 in reorganization-related expenses during the course of this case.

14                         **V.       FINANCIAL INFORMATION**

15                       **A.       Selected Financial Information**

16              The following table shows the Debtor's income and expenses for the fiscal year ending

17   April 30, 2014.

| Income Statement Data: | **Fiscal Year Ending April 2014** |
|---|---|
| Total revenues | 454,690 |
| Total expenses | 328,276 |
| Net income | 126,414 |

18

19

20

21              The Debtor's balance sheet as of September 30, 2014 is as follows:

22   Assets

23        Cash                                    41,656

     Fixed assets (Net Depr)           5,320,971

24   **Total assets**                        **$ 5,362,627**

25   Liabilities

26        Accounts payable                  258,502

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

| | |
|---|---:|
| Accrued interest & taxes | 33,082 |
| Notes payable | 11,206,099 |
| Total liabilities | **$ 11,497,683** |
| Shareholder equity | **$ (6,135,056)** |
| Total liabilities & equity | **$ 5,362,627** |

### B.    Claims

#### 1.    Secured Claims

The Debtor is indebted to various creditors whose claims are secured, in whole or in part, by property owned by the Debtor or in which the Debtor assert a security interest.  Under the Plan, these claims have been placed in three classes.  These secured claims are summarized below.  The categories of secured claims discussed below are for convenience and do not track the classes of claims set forth in the Plan.

> **a.    Pacific Western Bank**.  As described in more detail above, Debtor is indebted to PWB for a loan secured by a trust deed and assignment of rents.

> **b.    Maxwell Morgan.**  As described in more detail above, Debtor is indebted to Maxwell Morgan for a loan secured by a trust deed and assignment of rents.  The total amount of Maxwell Morgan's Claim is approximately $8 million

> **c.    Santa Barbara County**.  Debtor owes approximately $191,000 to Santa Barbara County for past-due real property taxes.  By operation of California law, Santa Barbara County's tax claim is secured by a lien on the Property, which lien is senior to the secured claims of both PWB and Maxwell Morgan.

#### 2.    Administrative Expense Claims

Administrative Expense Claims consist primarily of (a) costs and expenses incurred in connection with the operation of the Debtor's business after the Petition Date, (b) claims of professionals who are or were employed at the expense of the Debtor's bankruptcy estates, to the extent allowed by the Court, and (c) fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, including quarterly fees payable to the United States Trustee.  Assuming

PAGE  8-    DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the Effective Date of the Plan is on or around February 1, 2015, the Debtor projects that there will be no unpaid Administrative Expense Claims other than Fee Claims.  The Debtor estimates that the total outstanding Fee Claims will be $35,000.

### 3.    Priority Claims

The Debtor estimates that there are no unpaid claims that arose before the Petition Date that are entitled to priority under section 507(a) of the Bankruptcy Code.

### 4.    Unsecured Claims

The Debtor listed $66,941.74 in unsecured claims on its Schedules.  The Court has set December 17, 2014 as the deadline for proofs of claim (other than certain government claims).

## VI.    DESCRIPTION OF THE PLAN

A discussion of the principal provisions of the Plan is set forth below.  The discussion of the Plan that follows is a summary only and is qualified in its entirety by reference to the full text of the Plan itself.  You are urged to read the Plan in full and make a thorough review of its terms in evaluating whether to accept or reject the Plan.  If any inconsistency exists between the summary herein and the Plan, the terms of the Plan control.

### A.    Classification and Treatment of Claims and Interests.

### 1.    Classification Generally.

The Plan designates Classes of Claims and Interests for purposes of voting on the Plan and making distributions.  All Claims, other than Administrative Expense Claims and Priority Tax Claims, and all Equity Interests are placed in Classes under the Plan.  A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in one or more other Classes to the extent that any remainder of the Claim falls within the description of such other Classes.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**2.    Unclassified Claims**

**a.    Administrative Claims**

Administrative Claims are claims incurred by the Debtor during the Bankruptcy Case. Each Administrative Claim other than Fee Claims accrued on or before, but unpaid as of, the Effective Date will be paid in full in Cash on the latest of: (i) the Effective Date; (ii) the date on which the Bankruptcy Court enters an order allowing such Administrative Claim; (iii) 30 days after the Claim is Allowed; or (iv) the date on which the Debtor and the holder of such Allowed Administrative Claim otherwise agree in writing. The Debtor do not believe that there will be any holders of Administrative Claims that are not Fee Claims.

**b.    Professional Fees**

Each professional person, whose retention or appointment in these Bankruptcy Case has been approved by the Bankruptcy Court, including counsel retained by the Debtor, accountants and other advisors for the Debtor, has a Fee Claim against the estates. Each professional shall file with the Bankruptcy Court and serve on all parties required to receive notice a final fee application within 45 days after the Effective Date. The failure to timely file the fee application as required under the Plan will result in the Fee Claim being forever barred and discharged. All Allowed Fee Claims shall be paid by the Reorganized Debtor from Cash from operations or through application of any retainer held by such professional person.

**c.    Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim will be paid the full amount of its Allowed Priority Tax Claim on the Effective Date or 30 days after the Claim is Allowed, whichever is later. The Debtor does not believe that there will be any holders of Priority Tax Claims.

**B.    Classified Claims**

A creditor will receive a distribution under the Plan only if such creditor is the holder of an Allowed Claim. Distributions under the Plan are in full satisfaction of all Claims. The Plan provides for classification and treatment of all Claims against the estate as follows:

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1    **1.    Class 1.  PWB Claim**

2    Class 1 is impaired by and entitled to vote on the Plan.  On or about the Effective Date,

3    the Reorganized Debtor will execute and deliver Amended Loan Documents to the Holder of the

4    Class 1 Claim.  The Amended Loan Documents will provide for repayment of the Allowed Class

5    1 Claim on the terms provided for in the Plan, which include: (a) interest accrual for the first

6    sixty months at the non-default fixed rate provided in the PWB Loan Documents, which is

7    4.59%, and pursuant to the note's floating-rate provision thereafter; (b) interest-only payments

8    beginning on the first month following the Effective Date, and continuing through and including

9    the twelfth month following the Effective Date; (c) beginning the thirteenth month following the

10   Effective Date, the Reorganized Debtor will make monthly payments of principal and interest

11   based on a twenty-year amortization schedule; (d) all unpaid amounts due on the Allowed Class

12   1 Claim will be paid no later than the eighty-fourth month following the Effective Date.

13   As security for the repayment of the Allowed Class 1 Claim under the Plan, PWB retains

14   all liens and security interests in the Debtor's property existing on the Petition Date and limited

15   by sections 552(a) and (b) of the Bankruptcy Code.  PWB is granted no liens or security interests

16   in any other property of the Debtor or Reorganized Debtor not existing on the Petition Date and

17   in accordance with sections 552(a) and (b) of the Bankruptcy Code.

18   **2.    Class 2.  Santa Barbara Tax Claim**

19   Class 2 is impaired by and entitled to vote on the Plan.  Interest will accrue on the unpaid

20   principal balance of the Santa Barbara Tax Claim at 7% per annum.  The Reorganized Debtor

21   shall pay (on or before the fifth Business Day of each month) the holder of the Allowed Class 2

22   Claim the amount of $15,000 per month, commencing the first month following the Effective

23   Date, and continuing until the Allowed Class 2 Claim is paid in full.

24   **3.    Class 3.  Maxwell Morgan Secured Claim**

25   Class 3 is impaired by and entitled to vote on the Plan.  The holder of the Class 3 claim

26   retains all liens and security interests in the Debtor's property existing on the Petition Date and

*PERKINS COIE* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  limited by sections 552(a) and (b) of the Bankruptcy Code.  The holder of the Class 3 claim is

2  granted no liens or security interests in any other property of the Debtor or Reorganized Debtor

3  not existing on the Petition Date and in accordance with sections 552(a) and (b) of the

4  Bankruptcy Code.  Interest will accrue on the unpaid principal balance of the Allowed Class 3

5  Claim at the non-default rate specified in the governing loan documents.  Reorganized Debtor

6  shall make no distributions in repayment of the Class 3 Claim through December 31, 2014.  On

7  or after January 1, 2016, Reorganized Debtor may, but is not required to, make distributions in

8  repayment of the Class 3 Claim if and only if the Reorganized Debtor is not in default of its

9  obligations under this Plan.

10          **4.      Class 4.  General Unsecured Claims**

11          Class 4 is impaired by and entitled to vote on the Plan.  Reorganized Debtor shall pay to

12  each holder of an Allowed Class 4 Claim, in Cash, the principal amount of such Allowed claim

13  without interest.  Each such holder will receive, beginning on first Business Day of the first

14  month following the Effective Date, such holder's Pro Rata share of $5,000.  Reorganized

15  Debtor shall continue to make substantially equal payments on the first Business Day of each

16  month thereafter, until Allowed Class 4 Claims are paid in full.

17          **5.      Class 5.  Equity Interests**

18          Class 5 is unimpaired and not entitled to vote on the Plan.  All legal, equitable, and

19  contractual rights of holders of Equity Interests with respect to their respective Equity Interests

20  shall remain unaltered.

21          **C.      Plan Funding**

22          The Plan will be funded by a combination of the Debtor's Cash on hand as of the

23  Effective Date and Cash that is collected or generated by the Reorganized Debtor after the

24  Effective Date.

25

26

PAGE  12-   DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

1              **D.**       **Distributions to Creditors**

2         The provisions of the Plan that govern distributions to creditors and the resolution of

3 disputed and contingent claims are set forth in Article 5 of the Plan. Certain of those provisions

4 are summarized below.

5              **1.**       **Distributions Generally**

6         Distributions under the Plan will be made on the dates specifically prescribed by the Plan.

7 Distributions to be made by the Reorganized Debtor under the Plan ordinarily will be made by

8 check drawn on a domestic bank. Withholding taxes and other amounts required to be withheld

9 under applicable law will be deducted from distributions. Distributions to creditors pursuant to

10 the Plan ordinarily will be delivered by First-Class mail, postage prepaid, in an envelope

11 addressed as directed in a request served on the Reorganized Debtor as provided in the Plan, but

12 if no such request is made, at the address shown in the Schedules, as they may from time to time

13 be amended, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy

14 Court, to such address. Reorganized Debtor shall serve as the disbursing agent under the Plan.

15              **2.**       **Limitations on Amending Claims**

16         Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim

17 may be amended by the holder of such Claim solely to decrease, but not to increase, the amount

18 of such Claim.

19              **E.**       **Executory Contracts and Unexpired Leases**

20         The Debtor intends to assume the unexpired lease agreement governing Tenant's

21 occupancy of the Property. Debtor is not aware of any other executory contracts or unexpired

22 leases to which it is a party, however, in the event that such agreements exist, they will be

23 rejected on the Effective Date pursuant to the provisions of the Plan. The Debtor is current on all

24 obligations owing under the lease agreement with Tenant, and therefore no Cure will be required.

25

26

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

114796-0001/LEGAL123421862.5

## VII.    THE REORGANIZED DEBTOR

### A.    Ownership and Management

#### 1.    Management

The Plan provides that upon the occurrence of the Effective Date, existing management (described above in section III.B) will remain in place.

### B.    Financial Projections - Fagerdala

Fagerdala has prepared financial projections for Fagerdala based on the treatment of the various claims under the Plan.  Attached hereto as **Exhibit B** are projected monthly statements of cash flow statements as of and for the eight fiscal yearly periods beginning on the estimated effective date.  These projections are based on the assumptions that, due to the fixed nature of the triple-net lease of the Debtor's real property, the Reorganized Debtor's income and expenses will remain relatively constant.

An important component of the cashflow projections appearing in Exhibit B is that the Reorganized Debtor will be able to build cash reserves for major property improvements that are not the responsibility of the tenant.  In addition, the Debtor believes that accumulation of cash reserves will enhance its ability to potentially obtain take-out financing to pay off the Class 1 claim of PWB.  As part of its reorganization planning, Debtor has negotiated with potential lenders and has discovered that industry practices typically dictate that a borrower in the Debtor's position must maintain minimum average deposit balances of approximately ten percent of the loan amount.

## VIII.   VOTING ON THE PLAN

### A.    Voting Eligibility

In general, a holder of a claim or interest may vote to accept or reject a plan if either (1) the claim or interest is "allowed," which means generally that it is not disputed, contingent or unliquidated in amount, and (2) the claim or interest is part of a class that is impaired by the plan. If a creditor or equity interest holder will not receive any distribution under a plan in respect of

PAGE  14-  DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

1  such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and

2  provides that the holder is not entitled to vote.  On the other hand, if the claim or interest is part

3  of a class that is not impaired, the Bankruptcy Code conclusively presumes that holder of such

4  claim or interest has accepted the plan and provides that the holder is not entitled to vote.  Under

5  section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired"

6  under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to

7  which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to

8  an accelerated payment of such claim or interest, the plan (a) cures all existing defaults (other

9  than defaults resulting from the occurrence of events of bankruptcy), (b) reinstates the maturity

10  of such claim or interest as it existed before the default, (c) compensates the holder of such claim

11  or interest for any damages resulting from such holder's reasonable reliance on such legal right

12  to an accelerated payment, and (d) does not otherwise alter the legal, equitable, or contractual

13  rights to which such claim or interest entitles the holder of such claim or interest.  Under the

14  Plan, only the holders of Allowed Claims (or of disputed claims that are temporarily allowed by

15  the Court for voting purposes) in Classes 1, 2, 3, and 4 are entitled to vote.  The holders of Class

16  5 Equity Interests are not impaired and are deemed to have accepted the Plan.

17  <strong>B.    Voting Deadline</strong>

18  The deadline for submitting completed ballots is 5:00 p.m.  (prevailing Pacific Time) on

19  _____, 2015 (the "<u>Voting Deadline</u>").  Only those ballots that are actually received by

20  the Voting Deadline will be counted as either accepting or rejecting the Plan.

21  <strong>C.    Acceptance By a Class</strong>

22  As a condition to confirmation, the Bankruptcy Code requires, among other things, that

23  (1) at least one class of claims that is impaired under the plan has accepted the plan, determined

24  without including any acceptance of the plan by any insider, and (2) except under certain

25  circumstances, each class of claims or interests that is impaired under the plan accepts the plan.

26  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by an impaired class of

PAGE  15-  DISCLOSURE STATEMENT

claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only the votes of those creditors who actually vote to accept or reject the plan.

Additionally, if creditors in a Class fail to (i) vote to either accept or reject the Plan and (ii) object to the Plan, such Class shall be deemed to accept the Plan.

### D.    Voting Procedures

#### 1.    Submission of Ballots

A form of ballot is included among the materials that accompany this Disclosure Statement. All votes to accept or reject the Plan must be cast by properly submitting a duly completed and executed ballot. Ballots must be delivered to the Debtor's counsel as designated in the ballot at the address or fax number set forth on the ballot and must be received by the Voting Deadline. The method of delivery of a ballot is at the election and risk of the voting creditor. Please carefully follow the directions contained on the enclosed ballot.

#### 2.    Incomplete Ballots

Any ballot received that (i) is not signed, (ii) does not contain sufficient information to permit the identification of the claimant, or (iii) does not indicate either an acceptance or rejection of the Plan or which indicates both acceptance and rejection of the Plan will be invalid and will not be counted as a vote cast with respect to the Plan.

#### 3.    Withdrawal or Change of Votes

A ballot may be withdrawn by delivering a written notice of withdrawal to the Debtor's counsel at any time prior to the Voting Deadline. Thereafter, a withdrawn ballot will not be effective unless approved by the Bankruptcy Court. In order to be valid, a notice of withdrawal must (i) specify the name of the holder who submitted the vote on the Plan to be withdrawn, (ii) contain a description of the Claim to which it relates and (iii) be signed by the holder in the same manner as on the ballot. The Debtor expressively reserve the absolute right to contest the validity of any such withdrawals of votes on the Plan. Any creditor who has submitted to the

PAGE  16-  DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Debtor's counsel a properly completed ballot prior to the Voting Deadline may change such vote by submitting to the Debtor's counsel prior to the Voting Deadline a subsequent properly completed ballot.  In the case where more than one timely, properly completed ballot is received with respect to the same Claim, the ballot that bears the latest date will be counted.

       **4.**      **Voting Multiple Claims.**

Only one form of ballot is provided for voting.  Any creditor that holds a Claim in more than one Class is required to vote separately with respect to each Claim.  Creditors with multiple Claims in the same Class shall have one Claim for voting and distribution purposes and all such amounts will be aggregated into one Claim and such creditor shall be entitled to submit only one ballot.  Please sign, and return in accordance with the instructions on the ballot form, a separate ballot with respect to each such Claim.

       **IX.**      **CONFIRMATION OF THE PLAN**

       **A.**      **Confirmation Hearing.**

The Bankruptcy Court will hold a hearing to consider confirmation of the Plan at on _____, 2015 at United States Bankruptcy Court for the District of Oregon, 1001 SW 5th Avenue, #700, Courtroom 3, Portland, Oregon 97204.

The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date and time made at the confirmation hearing.

       **B.**      **Deadline for Objecting to Confirmation.**

Any objection to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be filed with the Bankruptcy Court on or before _____, 2015 at 5:00 p.m. (Prevailing Pacific Time).

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## C.    Requirements for Confirmation.

### 1.    Confirmation Requirements Generally.

The Bankruptcy Court can confirm the Plan only if all the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation are that (i) the plan be accepted by all impaired classes of claims and of interests or, if rejected by an impaired class, the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) the plan is feasible, and (iii) the plan is in the "best interest" of creditors and stockholders that are impaired under the plan.

### 2.    Feasibility.

In connection with confirmation with the Plan, the Bankruptcy Court will have to determine that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan.  Fagerdala believes it will be able to perform its obligations under the Plan.

### 3.    Best Interests of Creditors.

Section 1129(a)(7) of the Bankruptcy Code requires that any holder of a claim or interest in an impaired class that votes against a proposed plan must receive under the plan distributions that have a value, as of the effective date of the plan, at least equal to that which the holder would receive if the debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.  To determine what creditors and Equity Interest holders would receive if a debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from a liquidation of its assets in the context of a hypothetical liquidation.  Such determination must take into account the fact that, as to each asset, all claims secured by that asset would have to be paid in full, as would all administrative expenses in the chapter 7 case and in the original bankruptcy case, before the balance of those proceeds would be made available to pay unsecured creditors and interest holders.  To determine if a plan is in the best interest of each impaired

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1   class, the present value of the distributions from the proceeds of the hypothetical liquidation of

2   the assets (after subtracting the amount attributable to secured claims and administrative

3   expenses of the bankruptcy case) must be compared with the present value of the consideration

4   offered to each such class under the plan.  In addition, the rule of absolute priority of distribution

5   from a debtor's estate must be applied.  Under that rule, no junior holder of a claim or equity

6   interest may receive distributions under a plan unless the plan provides that all senior classes will

7   be paid in full or unless all senior classes vote to accept the plan.  After consideration of the

8   effect that a chapter 7 liquidation would have on the ultimate proceeds available for distribution

9   to the debtor's creditors and interest holders (including (i) the increased cost and expense of

10  liquidation under chapter 7 arising from fees payable to a chapter 7 trustee and the attorneys and

11  other professional advisors to such trustee, (ii) the time value of money resulting from what is

12  likely a more protracted proceeding, and (iii) the application of the rule of absolute priority to

13  distributions in a chapter 7 case), the Debtor has determined that confirmation of the Plan will

14  provide each creditor in an impaired Class with a greater recovery than such creditor would

15  receive in a chapter 7 case concerning the Debtor.

16          Debtor estimates that in a liquidation case under chapter 7, general unsecured creditors

17  would receive no cash distributions because substantially all of the Debtor's assets are fully

18  encumbered by liens.  A liquidation analysis for Fagerdala is attached hereto as **Exhibit C**.  All

19  general unsecured creditors of Fagerdala will recover more under the Plan than they would in a

20  chapter 7 case.

21                    **D.      Confirmation Over Dissenting Class.**

22          The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all

23  impaired classes, as long as (a) the plan otherwise satisfies the requirements for confirmation, (b)

24  at least one impaired class of claims has accepted it without taking into consideration the votes of

25  any insiders in such class, and (c) the plan is "fair and equitable" and does not "discriminate

26

PAGE  19-   DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

1   unfairly" as to any impaired class that has not accepted the plan.  These so-called "cramdown"

2   provisions are set forth in section 1129(b) of the Bankruptcy Code.

3           **1.      Fair and Equitable.**

4           The Bankruptcy Code establishes different "cramdown" tests for determining whether a

5   plan is "fair and equitable" to dissenting impaired classes of secured creditors, unsecured

6   creditors, and equity interest holders as follows:

7               **a.      Secured Creditors.**

8           A plan is fair and equitable to a class of secured claims that rejects the plan if the plan

9   provides: (a) that each holder of a secured claim included in the rejecting class (i) retains the lien

10  securing its claim to the extent of the allowed amount of such claim, whether the property

11  subject to that lien is retained by the debtor or transferred to another entity, and (ii) receives on

12  account of its secured claim deferred cash payments having a present value, as of the effective

13  date of the plan, at least equal to such holder's interest in the estate's interest in such property;

14  (b) that each of the holders of the secured claims included in the rejecting class realizes the

15  "indubitable equivalent" of its allowed secured claim; or (c) for the sale, subject to section

16  363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims

17  included in the rejecting class, free and clear of such liens with such liens to attach to the

18  proceeds of sale, and the treatment of such liens on proceeds in accordance with clause (a) or (b)

19  of this paragraph.

20              **b.      Unsecured Creditors.**

21          A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the

22  plan provides that: (a) each holder of a claim included in the rejecting class receives or retains

23  under the plan property of a value, as of the effective date of the plan, equal to the amount of its

24  allowed claim; or (b) the holders of claims and interests that are junior to the claims of the

25  rejecting class will not receive or retain any property under the plan.

26

PAGE  20-   DISCLOSURE STATEMENT

1      **c.      Holders of Interests.**

2          A plan is fair and equitable as to a class of interests that rejects the plan if the plan

3      provides that: (a) each holder of an equity interest included in the rejecting class receives or

4      retains under the plan property of a value, as of the effective date of the plan, equal to the

5      greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is

6      entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the

7      interest; or (b) the holder of any interest that is junior to the interests of the rejecting class will

8      not receive or retain any property under the plan.

9          The Debtor believes that the Plan and the treatment of all impaired Classes under the Plan

10     satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

11     **2.      Unfair Discrimination.**

12         A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated

13     substantially equally with respect to other classes similarly situated and no class receives more

14     than it is legally entitled to receive for its claims or interests.  The Debtor believe that the Plan

15     does not discriminate unfairly against any impaired Class.  Under the Plan, unsecured creditors

16     are treated in one class.

17     **E.      Effects of Confirmation.**

18     **1.      Vesting of Estate Property.**

19         As of the Effective Date, the Reorganized Debtor shall be revested with title to all

20     property of its estate, free and clear of all liens, Claims and other interests, except to the extent

21     provided in the Plan or in the Confirmation Order.  As of the Effective Date, the Debtor may use

22     and dispose and otherwise deal with such property and may conduct its affairs, in each case,

23     without supervision of the Bankruptcy Court and free of any restrictions imposed by the

24     Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the

25     Plan or the Confirmation Order.

26

PAGE  21-  DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

**2.**    **Discharge.**

Except, as otherwise provided in the Plan or in the Confirmation Order, on the Effective

Date, pursuant to section 1141(d) of the Bankruptcy Code, Debtor shall be discharged from all

liability on any and all Claims against the Debtor that arose at any time before the Effective

Date.

**3.**    **Exculpation.**

Section 8.7 of the Plan provides:

> Neither the Debtor, nor any of its respective officers, directors,
> members, representatives or agents who served as such during this
> Bankruptcy Case, shall have or incur any liability to any Entity for any
> act or omission in connection with or arising out of the negotiation of
> this Plan, the pursuit of confirmation of this Plan, the pursuit of
> approval of the Disclosure Statement, the consummation of this Plan,
> the transactions contemplated and effectuated by this Plan, the
> administration of this Plan or any other act or omission during the
> administration of these Bankruptcy Cases or the Debtors' estates.
> Notwithstanding the foregoing, Claims arising from gross negligence
> or willful misconduct on behalf of the Debtors are not waived or
> released in any manner by this Plan.  In all respects, the Debtors will be
> entitled to rely upon the advice of counsel with respect to its duties and
> responsibilities under this Plan.

**4.**    **Effect on Insurance Policies.**

Section 8.8 of the Plan addresses insurance policies issued to the Debtor and the various

agreements related to such policies.

**X.    ALTERNATIVES TO THE PLAN**

The Debtor believes that the Plan affords its creditors the greatest opportunity for

realization on their assets and the greatest possible value that could be realized on their claims.

The Debtor also believe that the Plan is fair and reasonable in its treatment of all constituencies.

Possible alternatives to the Plan which might arise if the Plan is rejected or if the Court refuses to

confirm the Plan include (i) dismissal of the Bankruptcy Case; (ii) conversion of the Bankruptcy

Case to cases under chapter 7 of the Bankruptcy Code, which would entail the mandatory

appointment of a trustee; (iii) submission by the Debtor of an alternative plan or the filing by

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  another party in interest of an alternative or competing plan; and (iv) the appointment of a

2  chapter 11 trustee for the purpose of operating the Debtor's business activities, administering the

3  Debtor's assets, and filing an alternative plan.

4  ## XI.    RISK FACTORS

5  This Disclosure Statement contains forward-looking statements that involve risks and

6  uncertainties.  The Debtor's income is dependent on a revenue stream generated by a single piece

7  of real property.  As such, any risk effecting the Property (including but not limited to natural

8  disaster, adverse land use regulatory changes, changing economic conditions in the surrounding

9  area, and condemnation through eminent domain) could have negative impacts on the Debtor.  In

10  addition, the Debtor's ability to lease the Property depends on larger macroeconomic trends in

11  the regional economy and real estate markets.

12  The foregoing discussion of risk factors is intended to be a non-exclusive summary of

13  certain of those risks and uncertainties.  Creditors should consider carefully these risks and are

14  encouraged to supplement this summary with their own analysis and evaluation of the Plan

15  ## XII.    FEDERAL TAX CONSEQUENCES OF THE PLAN

16  **CIRCULAR 230 NOTICE: WE MUST INFORM YOU THAT TO ENSURE**

17  **COMPLIANCE WITH THE REQUIREMENTS IMPOSED BY THE INTERNAL**

18  **REVENUE SERVICE, ANY FEDERAL TAX ADVICE CONTAINED IN THIS**

19  **DOCUMENT RELATING TO FEDERAL TAXES, WAS NOT INTENDED OR**

20  **WRITTEN TO BE USED OR RELIED UPON, AND IT CANNOT BE USED OR RELIED**

21  **UPON, FOR THE PURPOSE OF AVOIDING TAX RELATED PENALTIES THAT MAY**

22  **BE IMPOSED UNDER FEDERAL TAX LAW. UNDER THESE RULES, A TAXPAYER**

23  **MAY RELY ON PROFESSIONAL ADVICE TO AVOID FEDERAL TAX PENALTIES**

24  **ONLY IF THAT ADVICE IS REFLECTED IN A COMPREHENSIVE TAX OPINION**

25  **THAT CONFORMS TO STRINGENT REQUIREMENTS UNDER FEDERAL LAW.**

26  **THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE DEBTOR**

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1   **SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE**

2   **STATEMENT.**

3                 **A.**       **Scope of Discussion.**

4         The following discussion summarizes in general terms certain material federal income

5   tax consequences of the implementation of the Plan based upon existing provisions of the

6   Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and

7   current administrative rulings and practice. This summary does not address the federal income

8   tax consequences of the Plan to holders of priority claims or of secured claims, nor does it

9   address any state, local or foreign tax matters or the federal income tax consequences to certain

10   types of creditors (including financial institutions, life insurance companies, tax exempt

11   organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions

12   have been or will be requested from the Internal Revenue Service with respect to any of the tax

13   aspects of the Plan. The Debtor is not making any representations regarding the particular tax

14   consequences of confirmation and consummation of the Plan as to creditors or Equity Interest

15   holders, nor the Debtor or its professionals rendering any form of legal opinion or tax advice as

16   to such tax consequences. The tax laws applicable to corporations in bankruptcy are complex

17   and are subject to significant uncertainties. Each creditor and shareholder is urged to consult his,

18   her or its own tax advisor as to the consequences of the Plan under federal and applicable state,

19   local and foreign tax laws. Accordingly, the following summary of federal income tax

20   consequences of the Plan is for informational purposes only and should not be construed as tax

21   advice.

22                 **B.**       **Tax Consequences to Fagerdala.**

23                 **1.**       **Cancellation of Debt and Reduction of Tax Attributes.**

24         In general, absent an exception, a debtor will recognize cancellation of debt ("COD")

25   income upon satisfaction of its outstanding indebtedness for total consideration less than the

26   amount of such indebtedness. The amount of COD income, in general, is the excess of (a) the

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

adjusted issue price of the indebtedness satisfied, over (b) the sum of (x) the amount of cash paid, (y) the issue price of any new debt instrument issued in satisfaction of such indebtedness, and (z) the fair market value of any other new consideration given in satisfaction of such indebtedness.  Debtor will recognize COD income as a result of the implementation of the Plan to the extent the "issue price" of Debtor's obligation to make payments to creditors over time (or, if such obligation is determined not to constitute a "debt instrument" for federal income tax purposes, the fair market value of such obligation) is less than the adjusted issue price of the indebtedness satisfied.

However, any COD income recognize by Debtor generally will be excluded from income.  A debtor will not be required to include any amount of COD income in gross income if the debtor is under the jurisdiction of a court in a case under Chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding.  Instead, as a consequence of such exclusion, the debtor must reduce certain tax attributes (including certain suspended losses, credits and tax basis in the debtor's assets) by the amount of COD income that it excluded from gross income under Section 108 of the Internal Revenue Code.  Accordingly, in the event that Debtor recognizes COD income as a result of the implementation of the Plan as described above, Debtor generally will be required to make a corresponding reduction in its tax attributes.

### C.    Tax Consequences to Holders of General Unsecured Claims.

Pursuant to the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions in full satisfaction of their Claims.

In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes.  The timing and amount of that gain or loss will depend upon a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder will receive multiple distributions pursuant to the Plan and whether the Debtor's obligations to make payments will be treated as a new debt obligation for federal income purposes.

PAGE  25-   DISCLOSURE STATEMENT

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    In addition, the character of any gain or loss recognized by a creditor as long-term or

2    short-term capital gain or loss or as ordinary income or loss will be determined by a number of

3    factors, including the tax status of the creditor, whether the obligation from which the creditor's

4    claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from

5    which the claim arose has been held for more than one year, the allocation of any distributions

6    received between principal and unpaid accrued interest, whether and to what extent the creditor

7    has previously claimed a bad debt deduction, and the extent (if any) to which interest may be

8    imputed where multiple distributions are received.

9    Because each creditor's circumstances may be different, each creditor is urged to consult

10    his, her or its own tax advisor regarding the specific federal income tax consequences to that

11    creditor of implementation of the Plan.

12    ## XIII.   CONCLUSION AND RECOMMENDATION

13    The Debtor believes that confirmation and implementation of the Plan is preferable to

14    any alternative because it will provide the greatest recoveries to their creditors.  For this reason,

15    the Debtor urge all creditors entitled to vote to accept the Plan.

16

17    DATED:  November 14, 2014          **PERKINS COIE** LLP

18

19    By: /s/ Douglas R. Pahl
        Douglas R. Pahl, OSB No. 950476
        DPahl@perkinscoie.com
20      Stephen A. Raher, OSB No. 095625
        SRaher@perkinscoie.com
21    1120 N.W. Couch Street, Tenth Floor
      Portland, OR  97209-4128
22    Telephone:  503.727.2000
      Facsimile:  503.727.2222
23
      Attorneys for Debtor
24    Fagerdala USA - Lompoc, Inc.

25

26

PAGE  26-   DISCLOSURE STATEMENT

1

**EXHIBIT A**

2

**JOINT PLAN OF REORGANIZATION**

3

See attached (separately)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 1- EXHIBIT A

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

114796-0001/LEGAL123421862.5

1

2                          **EXHIBIT B**

3                      **Financial Projections**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE  1-    EXHIBIT B

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

| | Dec-14 | Jan-15 | Feb-15 | Mar-15 | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 41,806 | 41,806 | 41,806 | 41,806 | 41,806 | 41,806 | 42,224 | 42,224 | 42,224 | 42,224 | 42,224 | 42,224 | 42,224 |
| Expenses | | | | | | | | | | | | | |
| Interest to PWB | | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 | 12,065 |
| Current Taxes Santa Barabara | 55,000 | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | (14,694) | 28,241 | 28,241 | 28,241 | (26,759) | 28,241 | 28,659 | 28,659 | 28,659 | 28,659 | 28,659 | 28,659 | (26,341) |
| | | | | | | | | | | | | | |
| Cash | 125,418 | 50,724 | 58,965 | 67,205 | 75,446 | 28,686 | 36,927 | 45,585 | 54,244 | 62,903 | 71,561 | 80,220 | 88,878 |
| Administrative Costs | 25,000 | - | | | | | | | | | | | |
| Professional Fees | 35,000 | | | | | | | | | | | | |
| Monthly Cash from Operations | (14,694) | 28,241 | 28,241 | 28,241 | (26,759) | 28,241 | 28,659 | 28,659 | 28,659 | 28,659 | 28,659 | 28,659 | (26,341) |
| Cash prior to Principal Pmts to Creditors | 50,724 | 78,965 | 87,205 | 95,446 | 48,686 | 56,927 | 65,585 | 74,244 | 82,903 | 91,561 | 100,220 | 108,878 | 62,537 |

| | Creditor Balance | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 3,154,365 | - | | | | | | | | | | | |
| Santa Barbara County | 191,627 | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Unsecured Creditors | 66,941 | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Maxwell Morgan | 8,051,409 | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Payments to Creditors | | - | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Ending Cash | | 50,724 | 58,965 | 67,205 | 75,446 | 28,686 | 36,927 | 45,585 | 54,244 | 62,903 | 71,561 | 80,220 | 88,878 | 42,537 |

| | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 42,224 | 42,224 | 42,224 | 42,224 | 42,224 | 42,646 | 43,286 | 43,286 | 43,286 | 43,286 | 43,286 | 43,286 |
| Expenses | | | | | | | | | | | | |
| Interest to PWB | 12,065 | 12,035 | 12,004 | 11,973 | 11,942 | 11,910 | 11,879 | 11,848 | 11,816 | 11,784 | 11,752 | 11,720 |
| Current Taxes Santa Barabara | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | 28,659 | 28,689 | 28,720 | (26,249) | 28,782 | 29,236 | 29,907 | 29,938 | 29,970 | 30,002 | 30,034 | (24,934) |
| | | | | | | | | | | | | |
| Cash | 42,537 | 43,151 | 46,825 | 67,439 | 33,054 | 53,668 | 74,705 | 96,381 | 118,058 | 139,734 | 161,410 | 183,087 |
| Monthly Cash from Operations | 28,659 | 28,689 | 28,720 | (26,249) | 28,782 | 29,236 | 29,907 | 29,938 | 29,970 | 30,002 | 30,034 | (24,934) |
| Cash prior to Principal Pmts to Creditors | 71,196 | 71,841 | 75,545 | 41,191 | 61,836 | 82,904 | 104,612 | 126,320 | 148,028 | 169,736 | 191,444 | 158,152 |

| | Creditor Balance | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 3,154,365 | 8,044 | 8,075 | 8,106 | 8,137 | 8,168 | 8,199 | 8,231 | 8,262 | 8,294 | 8,325 | 8,357 | 8,389 |
| Santa Barbara County | 25,855 | 15,000 | 15,000 | | | | | | | | | | |
| Unsecured Creditors | 6,941 | 5,000 | 1,941 | | | | | | | | | | |
| Maxwell Morgan | 8,051,409 | | | | | | | | | | | | |
| Total Payments to Creditors | | 28,044 | 25,016 | 8,106 | 8,137 | 8,168 | 8,199 | 8,231 | 8,262 | 8,294 | 8,325 | 8,357 | 8,389 |
| Ending Cash | | 43,151 | 46,825 | 67,439 | 33,054 | 53,668 | 74,705 | 96,381 | 118,058 | 139,734 | 161,410 | 183,087 | 149,763 |

| | | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | | 43,286 | 43,286 | 43,286 | 43,286 | 43,286 | 43,719 | 44,375 | 44,375 | 44,375 | 44,375 | 44,375 | 44,375 |
| Expenses | | | | | | | | | | | | | |
| Interest to PWB | | 11,688 | 11,656 | 11,624 | 11,591 | 11,559 | 11,526 | 11,493 | 11,460 | 11,427 | 11,394 | 11,361 | 11,327 |
| Current Taxes Santa Barabara | | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | | 30,098 | 30,130 | 30,162 | (24,805) | 30,227 | 30,693 | 31,381 | 31,414 | 31,447 | 31,481 | 31,514 | (23,453) |
| | | | | | | | | | | | | | |
| Cash | | 149,763 | 171,439 | 193,116 | 214,792 | 181,468 | 203,145 | 225,254 | 248,019 | 270,784 | 293,549 | 316,314 | 339,079 |
| Monthly Cash from Operations | | 30,098 | 30,130 | 30,162 | (24,805) | 30,227 | 30,693 | 31,381 | 31,414 | 31,447 | 31,481 | 31,514 | (23,453) |
| Cash prior to Principal Pmts to Creditors | | 179,861 | 201,569 | 223,278 | 189,987 | 211,696 | 233,838 | 256,635 | 279,433 | 302,231 | 325,030 | 347,828 | 315,626 |
| | Creditor Balance | | | | | | | | | | | | |
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 3,055,778 | 8,421 | 8,454 | 8,486 | 8,518 | 8,551 | 8,584 | 8,616 | 8,649 | 8,682 | 8,716 | 8,749 | 8,782 |
| Santa Barbara County | - | | | | | | | | | | | | |
| Unsecured Creditors | - | | | | | | | | | | | | |
| Maxwell Morgan | 8,051,409 | | | | | | | | | | | | |
| Total Payments to Creditors | | 8,421 | 8,454 | 8,486 | 8,518 | 8,551 | 8,584 | 8,616 | 8,649 | 8,682 | 8,716 | 8,749 | 8,782 |
| Ending Cash | | 171,439 | 193,116 | 214,792 | 181,468 | 203,145 | 225,254 | 248,019 | 270,784 | 293,549 | 316,314 | 339,079 | 306,844 |

| | | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 | Oct-18 | Nov-18 | Dec-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | | 44,375 | 44,375 | 44,375 | 44,375 | 44,375 | 44,818 | 45,491 | 45,491 | 45,491 | 45,491 | 45,491 | 45,491 |
| Expenses | | | | | | | | | | | | | |
| Interest to PWB | | 11,294 | 11,260 | 11,226 | 11,192 | 11,158 | 11,124 | 11,089 | 11,055 | 11,020 | 10,985 | 10,950 | 10,915 |
| Current Taxes Santa Barabara | | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | | 31,581 | 31,615 | 31,649 | (23,317) | 31,717 | 32,195 | 32,901 | 32,936 | 32,970 | 33,005 | 33,040 | (21,925) |
| | | | | | | | | | | | | | |
| Cash | | 306,844 | 319,609 | 332,374 | 345,139 | 302,904 | 315,669 | 328,878 | 342,759 | 356,640 | 370,521 | 384,402 | 398,283 |
| Monthly Cash from Operations | | 31,581 | 31,615 | 31,649 | (23,317) | 31,717 | 32,195 | 32,901 | 32,936 | 32,970 | 33,005 | 33,040 | (21,925) |
| Cash prior to Principal Pmts to Creditors | | 338,425 | 351,224 | 364,023 | 321,822 | 334,621 | 347,864 | 361,779 | 375,695 | 389,610 | 403,526 | 417,442 | 376,358 |
| | Creditor Balance | | | | | | | | | | | | |
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 2,952,569 | 8,816 | 8,850 | 8,884 | 8,918 | 8,952 | 8,986 | 9,020 | 9,055 | 9,089 | 9,124 | 9,159 | 9,194 |
| Santa Barbara County | - | | | | | | | | | | | | |
| Unsecured Creditors | - | | | | | | | | | | | | |
| Maxwell Morgan | 8,051,409 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total Payments to Creditors | | 18,816 | 18,850 | 18,884 | 18,918 | 18,952 | 18,986 | 19,020 | 19,055 | 19,089 | 19,124 | 19,159 | 19,194 |
| Ending Cash | | 319,609 | 332,374 | 345,139 | 302,904 | 315,669 | 328,878 | 342,759 | 356,640 | 370,521 | 384,402 | 398,283 | 357,164 |

|  | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 45,491 | 45,491 | 45,491 | 45,491 | 45,491 | 45,946 | 46,635 | 46,635 | 46,635 | 46,635 | 46,635 | 46,635 |
| Expenses |  |  |  |  |  |  |  |  |  |  |  |  |
| Interest to PWB | 10,880 | 10,845 | 10,810 | 10,774 | 10,738 | 10,702 | 10,666 | 10,630 | 10,594 | 10,558 | 10,521 | 10,484 |
| Current Taxes Santa Barabara |  |  |  | 55,000 |  |  |  |  |  |  |  | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | 33,110 | 33,146 | 33,181 | (21,783) | 33,252 | 33,743 | 34,468 | 34,504 | 34,541 | 34,577 | 34,614 | (20,350) |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
| Cash | 357,164 | 371,045 | 384,926 | 398,807 | 357,688 | 371,569 | 385,905 | 400,930 | 415,955 | 430,980 | 446,005 | 461,030 |
| Monthly Cash from Operations | 33,110 | 33,146 | 33,181 | (21,783) | 33,252 | 33,743 | 34,468 | 34,504 | 34,541 | 34,577 | 34,614 | (20,350) |
| Cash prior to Principal Pmts to Creditors | 390,274 | 404,191 | 418,107 | 377,024 | 390,940 | 405,312 | 420,373 | 435,434 | 450,496 | 465,557 | 480,619 | 440,681 |

| Principal Pmts to Creditors | Creditor Balance |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PWB | 2,844,522 | 9,229 | 9,265 | 9,300 | 9,336 | 9,371 | 9,407 | 9,443 | 9,479 | 9,516 | 9,552 | 9,589 | 9,625 |
| Santa Barbara County | - |  |  |  |  |  |  |  |  |  |  |  |
| Unsecured Creditors | - |  |  |  |  |  |  |  |  |  |  |  |
| Maxwell Morgan | 8,051,409 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total Payments to Creditors |  | 19,229 | 19,265 | 19,300 | 19,336 | 19,371 | 19,407 | 19,443 | 19,479 | 19,516 | 19,552 | 19,589 | 19,625 |
| Ending Cash |  | 371,045 | 384,926 | 398,807 | 357,688 | 371,569 | 385,905 | 400,930 | 415,955 | 430,980 | 446,005 | 461,030 | 421,056 |

|  | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Oct-20 | Nov-20 | Dec-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 46,635 | 46,635 | 46,635 | 46,635 | 46,635 | 47,101 | 47,808 | 47,808 | 47,808 | 47,808 | 47,808 | 47,808 |
| Expenses |  |  |  |  |  |  |  |  |  |  |  |  |
| Interest to PWB | 10,448 | 10,411 | 10,374 | 10,336 | 10,299 | 10,261 | 10,224 | 10,186 | 10,148 | 10,110 | 10,072 | 10,033 |
| Current Taxes Santa Barabara |  |  |  | 55,000 |  |  |  |  |  |  |  | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | 34,687 | 34,724 | 34,761 | (20,202) | 34,836 | 35,340 | 36,084 | 36,122 | 36,160 | 36,198 | 36,236 | (18,726) |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
| Cash | 421,056 | 436,081 | 451,106 | 466,131 | 426,156 | 441,181 | 456,673 | 472,871 | 489,068 | 505,266 | 521,464 | 537,662 |
| Monthly Cash from Operations | 34,687 | 34,724 | 34,761 | (20,202) | 34,836 | 35,340 | 36,084 | 36,122 | 36,160 | 36,198 | 36,236 | (18,726) |
| Cash prior to Principal Pmts to Creditors | 455,743 | 470,805 | 485,867 | 445,929 | 460,992 | 476,521 | 492,756 | 508,992 | 525,228 | 541,464 | 557,700 | 518,937 |

| Principal Pmts to Creditors | Creditor Balance |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PWB | 2,731,410 | 9,662 | 9,699 | 9,736 | 9,773 | 9,811 | 9,848 | 9,886 | 9,924 | 9,962 | 10,000 | 10,038 | 10,076 |
| Santa Barbara County | - |  |  |  |  |  |  |  |  |  |  |  |
| Unsecured Creditors | - |  |  |  |  |  |  |  |  |  |  |  |
| Maxwell Morgan | 8,051,409 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total Payments to Creditors |  | 19,662 | 19,699 | 19,736 | 19,773 | 19,811 | 19,848 | 19,886 | 19,924 | 19,962 | 20,000 | 20,038 | 20,076 |
| Ending Cash |  | 436,081 | 451,106 | 466,131 | 426,156 | 441,181 | 456,673 | 472,871 | 489,068 | 505,266 | 521,464 | 537,662 | 498,860 |

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 47,808 | 47,808 | 47,808 | 47,808 | 47,808 | 48,286 | 49,010 | 49,010 | 49,010 | 49,010 | 49,010 | 49,010 |
| Expenses | | | | | | | | | | | | |
| Interest to PWB | 9,995 | 9,956 | 9,917 | 9,878 | 9,839 | 9,800 | 9,760 | 9,721 | 9,681 | 9,641 | 9,601 | 9,561 |
| Current Taxes Santa Barabara | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | 36,313 | 36,352 | 36,390 | (18,571) | 36,469 | 36,986 | 37,750 | 37,789 | 37,829 | 37,869 | 37,909 | (17,051) |
| | | | | | | | | | | | | |
| Cash | 498,860 | 515,058 | 531,256 | 547,454 | 508,652 | 524,850 | 541,526 | 558,927 | 576,327 | 593,727 | 611,128 | 628,528 |
| Monthly Cash from Operations | 36,313 | 36,352 | 36,390 | (18,571) | 36,469 | 36,986 | 37,750 | 37,789 | 37,829 | 37,869 | 37,909 | (17,051) |
| Cash prior to Principal Pmts to Creditors | 535,173 | 551,410 | 567,647 | 528,884 | 545,121 | 561,836 | 579,276 | 596,716 | 614,156 | 631,596 | 649,037 | 611,477 |

| | Creditor Balance | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 2,612,996 | 10,115 | 10,154 | 10,192 | 10,231 | 10,271 | 10,310 | 10,349 | 10,389 | 10,429 | 10,469 | 10,509 | 10,549 |
| Santa Barbara County | - | | | | | | | | | | | | |
| Unsecured Creditors | - | | | | | | | | | | | | |
| Maxwell Morgan | 8,051,409 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total Payments to Creditors | | 20,115 | 20,154 | 20,192 | 20,231 | 20,271 | 20,310 | 20,349 | 20,389 | 20,429 | 20,469 | 20,509 | 20,549 |
| Ending Cash | | 515,058 | 531,256 | 547,454 | 508,652 | 524,850 | 541,526 | 558,927 | 576,327 | 593,727 | 611,128 | 628,528 | 590,928 |

| | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 49,010 | 49,010 | 49,010 | 49,010 | 49,010 | 49,500 | 50,243 | 50,243 | 50,243 | 50,243 | 50,243 | 50,243 |
| Expenses | | | | | | | | | | | | |
| Interest to PWB | 9,521 | 9,480 | 9,439 | 9,399 | 9,358 | 9,316 | 9,275 | 9,234 | 9,192 | 9,150 | 9,108 | 9,066 |
| Current Taxes Santa Barabara | | | | 55,000 | | | | | | | | 55,000 |
| Management Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Monthly Cash from Operations | 37,989 | 38,030 | 38,071 | (16,889) | 38,152 | 38,684 | 39,467 | 39,509 | 39,550 | 39,592 | 39,634 | (15,324) |
| | | | | | | | | | | | | |
| Cash | 590,928 | 608,329 | 625,729 | 643,129 | 605,530 | 622,930 | 640,820 | 659,453 | 678,086 | 696,719 | 715,352 | 733,985 |
| Monthly Cash from Operations | 37,989 | 38,030 | 38,071 | (16,889) | 38,152 | 38,684 | 39,467 | 39,509 | 39,550 | 39,592 | 39,634 | (15,324) |
| Cash prior to Principal Pmts to Creditors | 628,918 | 646,359 | 663,800 | 626,241 | 643,682 | 661,614 | 680,288 | 698,962 | 717,637 | 736,311 | 754,986 | 718,661 |

| | Creditor Balance | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Pmts to Creditors | | | | | | | | | | | | | |
| PWB | 2,489,030 | 10,589 | 10,630 | 10,670 | 10,711 | 10,752 | 10,793 | 10,834 | 10,876 | 10,917 | 10,959 | 11,001 | 11,043 |
| Santa Barbara County | - | | | | | | | | | | | | |
| Unsecured Creditors | - | | | | | | | | | | | | |
| Maxwell Morgan | 8,051,409 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total Payments to Creditors | | 20,589 | 20,630 | 20,670 | 20,711 | 20,752 | 20,793 | 20,834 | 20,876 | 20,917 | 20,959 | 21,001 | 21,043 |
| Ending Cash | | 608,329 | 625,729 | 643,129 | 605,530 | 622,930 | 640,820 | 659,453 | 678,086 | 696,719 | 715,352 | 733,985 | 697,618 |

1

2                                  **EXHIBIT C**

3                              **Liquidation Analysis**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

114796-0001/LEGAL123421862.5

| Sale of Building | |
|---|---|
| Estimated quick sale | 6,000,000 |
| Cost of Sale | (240,000) |
| Chapter 7 trustee's commission | (203,250) |
| Net cash proceeds | 5,556,750 |
| Payments to secured creditors | |
| Pacific Western | (3,154,365) |
| Santa Barbara County | (191,627) |
| Maxwell Morgan | (8,051,409) |
| Deficiency | (5,840,651) |

Exhibit C
Page 1 of 1