UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 26 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In the Matter of: FAGERDALA USA -
LOMPOC, INC.,

Debtor,

_____

PACIFIC WESTERN BANK and
COASTLINE RE HOLDINGS CORP.,

Appellants,

v.

FAGERDALA USA - LOMPOC, INC.,

Appellee.

No. 16-35430

D.C. No. 3:15-cv-01792-MO
U.S. District Court for Oregon,
Portland

**MANDATE**

The judgment of this Court, entered June 04, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure. Each party shall bear its own

costs.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Rhonda Roberts
Deputy Clerk
Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE FAGERDALA USA - LOMPOC, INC., *Debtor,* | No. 16-35430 <br><br> D.C. No. 3:15-cv-01792-MO |
| PACIFIC WESTERN BANK; COASTLINE RE HOLDINGS CORP., *Appellants,* <br><br> v. <br><br> FAGERDALA USA - LOMPOC, INC., *Appellee.* | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted March 9, 2018
Portland, Oregon

Filed June 4, 2018

Before: N. Randy Smith, Morgan Christen,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge N.R. Smith

2 IN RE FAGERDALA USA - LOMPOC, INC.,

## SUMMARY[*]

### Bankruptcy

The panel (1) reversed the district court's order affirming the bankruptcy court and (2) vacated the bankruptcy court's order granting a chapter 11 debtor's motion to designate claims for bad faith and preclude the claims from being voted against a plan of reorganization.

A secured creditor purchased a number of general unsecured claims and voted its secured claim and the purchased claims against the plan. The bankruptcy court designated the purchased claims for bad faith.

The panel held that, under 11 U.S.C. § 1126(e), a bankruptcy court may not designate claims for bad faith simply because (1) a creditor offers to purchase only a subset of available claims in order to block a plan of reorganization, and/or (2) blocking the plan will adversely impact the remaining creditors. The panel held that, at a minimum, there must be some evidence that the creditor is seeking to secure some untoward advantage over other creditors for some ulterior motive. Accordingly, the bankruptcy court erred when it refused to analyze whether the secured creditor acted under an ulterior motive beyond its mere enlightened self-interest in protecting its secured claim. The panel remanded the case to the bankruptcy court.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Teresa H. Pearson (argued) and David W. Hercher, Miller Nash Graham & Dunn LLP, Portland, Oregon; David K. Eldan, Parker Milliken Clark O'Hara & Samuelian, Los Angeles, California; for Appellants.

Douglas R. Pahl (argued), Perkins Coie LLP, Portland, Oregon, for Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

Under 11 U.S.C. § 1126(e), a bankruptcy court may not designate claims for bad faith simply because (1) a creditor offers to purchase only a subset of available claims in order to block a plan of reorganization, and/or (2) blocking the plan will adversely impact the remaining creditors. Bad faith requires more. *See Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am.* (*In re Figter*), 118 F.3d 635, 639 (9th Cir. 1997). At a minimum, there must be some evidence that a creditor is seeking "to secure some untoward advantage over other creditors for some ulterior motive." *Id.* Accordingly, the bankruptcy court erred when it refused to analyze whether Pacific Western acted under an "ulterior motive," beyond its "mere enlightened self interest" in protecting its secured claim. *Id.* In the absence of some ulterior motive, the mere failure to make purchase offers to all outstanding creditors does not support a bad faith finding—even if the outstanding creditors will be adversely affected by a decision to block the reorganization plan.

4  IN RE FAGERDALA USA - LOMPOC, INC.,

## I. Factual Proceedings

### A. The Parties

Fagerdala USA - Lompoc, Inc., the debtor, owns real property worth approximately $6 million. Pacific Western Bank, through its wholly-owned entity, Coastline RE Holdings Corp. (collectively "Pacific Western"), holds the senior, secured claim (in excess of $3.95 million) on Fagerdala's real property.

### B. Bankruptcy Court Proceedings

Fagerdala filed for Chapter 11 bankruptcy on August 14, 2014. Fagerdala filed an initial reorganization plan on November 14, 2014 and a first amended plan of reorganization on April 27, 2015. Both plans placed Pacific Western's claim in Class 1, and the general unsecured claims in Class 4.[1] All claims were deemed impaired in both plans.[2] Therefore, to "cramdown" the plan under § 1129(a)(10), Fagerdala needed the approval of at least one impaired class.

To block Fagerdala's proposed plan, Pacific Western purchased a number of the general unsecured claims. Pacific Western's legal counsel testified that its "motivation was to acquire for the bank a blocking position in the unsecured

---

[1] Class 2 contained only a tax claim by Santa Barbara County and Class 3 consisted of an insider claim by Maxwell Morgan, which was subordinated to Pacific Western.

[2] Specifically, Pacific Western's claim was impaired because the proposed interest rate was lower than the penalty interest rate for the loan, and both plans modified the length of the term and other loan provisions.

class" and that the sole goal was "to do what was best for [Pacific Western] economically." Pacific Western provided its legal counsel a budget, which was insufficient to purchase all the general unsecured claims. Pacific Western's offer to purchase was rejected by some unsecured creditors, and it could not contact other unsecured creditors. Further, Pacific Western's counsel testified that he did not seek to purchase (1) claims that were valued at zero; (2) claims he believed were either insider controlled or would alert Fagerdala to Pacific Western's claim purchases; or (3) claims to which Fagerdala objected. Ultimately, Pacific Western purchased more than half of the claims by number, but only approximately ten percent by value (approximately $13,000) (hereinafter "Purchased Claims").

Fagerdala filed its second amended plan on June 2, 2015. The next day, Pacific Western voted its secured claim and the Purchased Claims against the plan. Because the Purchased Claims constituted at least "one-half in number" of the general unsecured class, Pacific Western's votes were sufficient to block the second amended plan. § 1126(c).

After the vote, Fagerdala moved to designate the votes of the Purchased Claims, arguing that Pacific Western had not purchased the claims in good faith. The bankruptcy court heard argument on the motion on June 10, 2015, and August 25, 2015. At the outset of the hearing, the bankruptcy court stated it wanted an answer to the question of "whether or not the bank offered to buy all the claims, or did they just buy a few." Pacific Western's counsel stated that he "did not attempt to buy every claim" and that "[w]ith respect to any claim that I did not attempt to buy, there were specific, and, in my view, good reasons to not attempt to buy it." He also offered examples of prior cases where a creditor had sought

6       In re Fagerdala USA - Lompoc, Inc.,

to block a plan by purchasing claims. In response, the bankruptcy court explicitly stated, as "a matter of law," it was not going to consider Pacific Western's motivation or rationale for offering to purchase only a subset of claims.

The bankruptcy court then granted Fagerdala's designation motion, stating:

> The plan of reorganization under consideration proposes to pay Class 4 claims in full with interest within 60 days of confirmation. It is undisputed that unsecured creditors will not be paid in a liquidation or in the event this reorganization fails and [Pacific Western] forecloses.

> I conclude that designation is appropriate in this case **because [Pacific Western] will have an unfair advantage over the unsecured creditors who did not receive a purchase offer and who hold the largest percentage of claims in this in terms of amount.**

> . . . .

> Good faith does not require a creditor to act with selfless disinterest. And the fact that a creditor purchases claims to take a blocking position is not, per se, bad faith under [§ 1126]. **However, a creditor's conduct in further of its own interest should not result in an unfair disadvantage to other**

> **creditors.** [*In re Pleasant Hill Partners, L.P.*, 163 B.R. 388 (Bankr. N.D. Ga. 1994].
>
> That principle was a factor in – in *Figter* where the court affirmed the bankruptcy court's denial of a motion under Section 1126(e). In doing so the court in *Figter* **specifically noted that the secured creditor offered to purchase all of the unsecured claims at issue.** *See also* [*Principal Mut. Life Ins. Co. v. Lakeside Assocs. (In re Deluca)*, 194 B.R. 797 (Bankr. E.D. Va. 1996)]. [*255 Park Plaza Assocs. Ltd. v. Conn. Gen. Life Ins. Co. (In re 225 Park Plaza Assocs. Ltd.)*, 100 F.3d 1214 (6th Cir. 1996)].
>
> **Allowing [Pacific Western] to block confirmation by purchasing such a small percentage of the unsecured debt in this case would be highly prejudicial to the creditors holding most of the unsecured debt; and, therefore, I am going to designate.**

With the Purchased Claims removed from voting, Fagerdala had sufficient creditors in the general unsecured class to accept the plan. The bankruptcy court ultimately confirmed the fourth amended plan.[3]

---

[3] In between the two hearings, Fagerdala filed a third amended plan. The third amended plan split Class 1 into two parts: Class 1A (containing Pacific Western's secured claim), and Class 1B (containing the Purchased Claims). Even though Fagerdala moved the Purchased Claims into a different class, it treated both Class 1B and Class 4, the remaining

8          IN RE FAGERDALA USA - LOMPOC, INC.,

## C.  District Court Proceedings

The district court affirmed the bankruptcy court's designation of the Purchased Claims with reservation. Pacific Western timely appealed. We have jurisdiction under 28 U.S.C. § 158(d)(1), and we reverse.[4]

## II.  Standard of Review

We review the bankruptcy court's ultimate determination of good faith for clear error. *Figter*, 118 F.3d at 638. "To the extent that our review requires us to define the general parameters of a good faith determination, we are reviewing a question of law. To the extent that we must review a pure historical fact determination, we are reviewing a question of fact." *Id.* "[A]n appellate court must correct any legal error infecting a bankruptcy court's decision. So if the bankruptcy court somehow misunderstood the nature of the [legal question]—or if it devised some novel multi-factor test for addressing that issue—an appellate court should apply *de novo* review." *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 968 n.7 (2018). Legal error constitutes clear error in the ultimate determination. *Cf. Koon v. United States*, 518 U.S. 81, 100 (1996).

---

unsecured general creditors, the same. These classes were left in place in the fourth amended plan, which the bankruptcy court confirmed on September 14, 2015.

[4] Fagerdala's Motion to Dismiss the Appeal as Moot, filed after this case was submitted, is **DENIED**.

## III. Discussion

Pacific Western argues that the district court erred by considering only the effect of Pacific Western's actions, without respect for its motivation. We agree. The bankruptcy court found that "designation is appropriate in this case because [Pacific Western] will have an unfair advantage over the unsecured creditors who did not receive a purchase offer and who hold the largest percentage of claims in this in terms of amount." In the bankruptcy court's ruling, only two facts were relevant: (1) Pacific Western did not make an offer to all unsecured creditors; and (2) if Pacific Western's Purchased Claims were voted, it would "have an unfair advantage" and be "highly prejudicial" to other creditors. However, under § 1126(e), neither of these considerations—alone or together—are by themselves sufficient to support a finding of bad faith. To explain, we outline the basic principles of good faith determinations under § 1126(e) and then turn to the two errors made by the bankruptcy court.

### A. General Principles of Good Faith Under § 1126(e)

"On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith . . . ." § 1126(e). To "designate" means the votes for the claims will not be counted in voting to accept or reject the plan. *Figter*, 118 F.3d at 638. The definition of "good faith" is not provided in statute and was "left to the courts" by Congress. *Id.*

"[T]he concept of good faith is a fluid one, and no single factor can be said to inexorably demand an ultimate result, nor must a single set of factors be considered." *Id.* at 639.

10      In re Fagerdala USA - Lompoc, Inc.,

Generally, § 1126(e) "appl[ies]" to those who were not attempting to protect their own proper interests, but who were, instead, attempting to obtain some benefit to which they were not entitled." *Id.* at 638. An entity acts in bad faith when it "seeks to secure some untoward advantage over other creditors for some ulterior purpose." *Id.* at 639.

However, as "fluid" as the concept of good faith may be, bad faith explicitly does not include "enlightened self interest, even if it appears selfish to those who do not benefit from it." *Id.* "It is always necessary to keep in mind the difference between a creditor's self interest as a creditor and a motive which is ulterior to the purpose of protecting a creditor's interest." *Id.* Thus, "the mere fact that a creditor has purchased additional claims for the purpose of protecting his own existing claim does not demonstrate bad faith or an ulterior motive." *Id.* "[P]urchas[ing] . . . claims for the very purpose of blocking confirmation of . . . [a] proposed plan" "is not to be condemned." *Id.*

## B. Failure to Offer to Purchase all Claims in a Class

Neither *Figter* nor the Bankruptcy Code support the bankruptcy court's conclusion that failing to make an offer to all members of a class is (by itself) sufficient evidence of bad faith. In *Figter*, the creditor sought to purchase all the claims in the class, but that fact was only one—of several—that contributed to the bankruptcy court's finding of good faith. 118 F.3d at 640. The *Figter* creditor was not advancing another plan, was not a competing entity in the apartment-owning business, faced a complex lien situation if the building was divided into condos (rather than keeping it as an apartment building) as proposed in the debtor's plan, and "acted to protect its interests as [the] major creditor." *Id.*

In re Fagerdala USA - Lompoc, Inc.,                11

Considering all those facts as a whole, we found the bankruptcy court did not commit clear error by finding the *Figter* creditor acted in good faith. *Id.* The fact that the *Figter* creditor offered to purchase all claims was not the singular, dispositive factor; it was one among several.

It is also true that, while offering to purchase all claims is certainly an indicator of *good faith*, failing to do so cannot be evidence of *bad faith*. As we have explicitly emphasized: "the mere fact that a creditor has purchased additional claims for the purpose of protecting his own existing claim does not demonstrate bad faith or an ulterior motive." *Id.* at 639; *see also 225 Park Plaza Assocs.*, 100 F.3d at 1219 ("Indeed, 'the mere fact that a purchase of creditors' interests is for . . . securing the approval or rejection of a plan does not of itself amount to bad faith.' If bad faith could be found any time a claim is purchased to block approval of a plan, there would be no incentive to purchase claims." (citations omitted) (quoting *In re Allegheny Int'l Inc.*, 118 B.R. 282, 289 (Bankr. W.D. Pa. 1990)); *In re Dish Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am. Inc.)*, 634 F.3d 79, 102 (2d Cir. 2011) ("Merely purchasing claims in bankruptcy 'for the purpose of securing the approval or rejection of a plan does not of itself amount to bad faith.'" (quoting *In re P-R Holding Corp.*, 147 F.2d 895, 897 (2d Cir. 1945)). "Thus, if [the creditor] acted out of enlightened self interest, it is not to be condemned simply because it frustrated [the debtor's] desires. That is true, even if [the creditor] purchased [the] claims for the very purpose of blocking confirmation of [the debtor's] proposed plan." *Figter*, 118 F.3d at 639. Blocking a plan takes only a numerical majority of the class, not the entire class or a majority of the class by value. § 1126(c) ("A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and

more than one-half in number of the allowed claims . . . .”). Doing something allowed by the Bankruptcy Code and case law, without evidence of ulterior motive, cannot be bad faith. Not offering to purchase all the claims in a class (to later use those claims to block a plan) is not—alone—sufficient to evidence the bad faith necessary to designate votes under § 1126(e). As such, the bankruptcy court erred by finding bad faith based on Pacific Western’s decision to not offer to purchase all the general unsecured claims.

## C. Consideration of the Effect of Blocking a Plan on Other Creditors

The bankruptcy court’s conclusion that allowing Pacific Western to vote the Purchased Claims would give it an “unfair advantage” over other creditors incorrectly examined only the *negative effect* of the action, not the *motivation* of the creditor, and failed to establish whether Pacific Western had acted to “secure some untoward advantage over other creditors *for some ulterior motive*.” *Figter*, 118 F.3d at 639 (emphasis added). The bankruptcy court borrowed the concept of “unfair advantage” from *In re Pleasant Hill Partners*, a Northern District of Georgia Bankruptcy Court decision, which held that “[t]he creditor’s conduct in furtherance of its own interest . . . should not result in unfair disadvantage to other creditors or the debtor.” 163 B.R. at 395. However, this concept is not supported by our case law in *Figter* nor the precedents in other Circuits.

*Figter* certainly stated that determining good faith was a “fluid” concept and that “no single factor” or “single set of factors” was conclusive. 118 F.3d at 639. However, we also pointedly stated that there is a “necessary” distinction between “a creditor’s self interest as a creditor and a motive

which is ulterior to the purpose of protecting a creditor's interest." *Id.* To ensure this distinction is maintained, *Figter* repeatedly focuses the bad faith inquiry on the *motive* of the creditor, particularly, on whether the creditor has an "ulterior motive," and is seeking "to secure some untoward advantage." *Id.* We explicitly held that creditors do not need "to approach reorganization plan votes with a high degree of altruism and with the desire to help the debtor and their fellow creditors. *Far from it*." *Id.* (emphasis added). Thus, a creditor's actions are not bad faith simply because they "appear selfish to those who do not benefit from it." *Id.* "[I]f [the creditor] acted out of enlightened self interest, it is not to be condemned simply because it frustrated [the debtor's] desires. That is true, *even if [the creditor] purchased [the] claims for the very purpose of blocking confirmation of [the debtor's] proposed plan*." *Id.* (emphasis added).

Rather, bad faith is determined when the creditor was "not attempting to protect [its] own proper interests, but . . . w[as], instead, attempting to *obtain some benefit to which [it] w[as] not entitled*." *Id.* at 638 (emphasis added). As the Second Circuit noted, bad faith is found when "[t]he purchasing party . . . was less interested in maximizing the return on its claim than in diverting the progress of the proceedings *to achieve an outside benefit*." *In re DBSD N. Am. Inc.*, 634 F.3d at 104 (emphasis added).[5] Noted examples of bad faith include: a

---

[5] This definition reflects the purpose behind the "good faith" requirement, which was enacted in response to the Fifth Circuit's decision in *Texas Hotel Securities Corp. v. Waco Development Co.*, 87 F.2d 395 (5th Cir. 1936). *See Young v. Higbee Co.*, 324 U.S. 204, 211 n.10 (1945). In *Texas Hotel*, Waco Development, which owned the Roosevelt Hotel, filed for bankruptcy. 87 F.2d at 397. Waco Development's proposed reorganization plan granted a third-party the lease to operate the hotel. *Id.* A Texas Hotel subsidiary had held the lease to operate the hotel in the

14      In re Fagerdala USA - Lompoc, Inc.,

non-preexisting creditor "purchas[ing] a claim for the purpose
of blocking an action against it," competitors purchasing
claims to "destroy the debtor's business in order to further
their own," or a debtor arranging to have an insider purchase
claims. *See Figter*, 118 F.3d at 639 (citing *In re Keyworth*,
47 B.R. 966, 971–72 (Bankr. D. Colo. 1985); *In re MacLeod
Co.*, 63 B.R. 654, 655 (Bankr. S.D. Ohio 1986); *In re
Allegheny Int'l, Inc.*, 118 B.R. at 289; *In re Holly Knoll
P'ship*, 167 B.R. 381, 389 (Bankr. E.D. Pa. 1994); *In re
Applegate Prop., Ltd.*, 133 B.R. 827, 834–35 (Bankr. W.D.
Tex. 1991)). Merely protecting a claim to its fullest extent
cannot be evidence of bad faith. There must be some
evidence beyond negative impact on other creditors.

Here, the bankruptcy court expressly refused to consider
Pacific Western's motivations or determine whether Pacific
Western was seeking an "untoward advantage over other
creditors for some ulterior motive," i.e., "to obtain some
benefit to which [Pacific Western] w[as] not entitled." *Id.*
638–39.[6] The bankruptcy court erred both by considering the

---

past, but after it defaulted, the lease was cancelled by judicial order. *Id.* at
398–99. Texas Hotel purchased enough claims to block the plan, with the
"hope[] to force [a plan] that would give them again the operation of the
hotel or other wise [sic] reestablish an interest that they felt they justly had
in the property." *Id.* at 398. The district court disallowed the votes. *Id.* at
397. However, on appeal, the Fifth Circuit held the Bankruptcy Act did
not authorize scrutinizing the motivations of those purchasing claims and
allowed the claims to be voted. *Id.* at 400. Later, in *Young*, the Supreme
Court noted that the "good faith" provisions were enacted to "bar creditors
from a vote who were prompted by such a purpose [as seen in *Texas
Hotel*]." 324 U.S. at 211 n.10.

[6] Contrary to Fagerdala's arguments on appeal, the bankruptcy court
explicitly stated it was not considering Pacific Western's motivation as a
matter of law; only the *fact* that Pacific Western had not made an offer to

IN RE FAGERDALA USA - LOMPOC, INC.,          15

effect on other creditors, without additional evidence of bad faith, and not making actual findings on Pacific Western's motivations.

## IV.  Conclusion

Therefore, we reverse the district court's order affirming the bankruptcy court, vacate the bankruptcy court's order granting Fagerdala's motion to designate the Purchased Claims, and remand this case to the bankruptcy court for proceedings consistent with this opinion.[7] Each party shall bear its own costs.

**REVERSED, VACATED, and REMANDED.**

---

all creditors mattered.

[7] In addition to the designation issue, Pacific Western argued that the bankruptcy court erred by allowing the Purchased Claims to be segregated from the other general unsecured claims. In its briefing, Fagerdala conceded the classification issue if the bankruptcy court were reversed on the designation question. Since we find the bankruptcy court committed legal error by designating the votes of the Purchased Claims, we also find that Fagerdala has conceded that Purchased Claims were improperly classified separately from the other general unsecured claims.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

Case 14-34642-tmb11    Doc 239    Filed 06/26/18

> ►   Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ►   The proceeding involves a question of exceptional importance; or
>
> ►   The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)**   **Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)**   **Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)**   **Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions

- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ....................................................................................................*(Rev. 12-1-09)*

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

*Note:* If you wish to file a bill of costs, it MUST be submitted on this form and filed, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

_____ v. _____        9th Cir. No. _____

The Clerk is requested to tax the following costs against: _____

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** | | | $ | $ | | | $ | $ |
| **Opening Brief** | | | $ | $ | | | $ | $ |
| **Answering Brief** | | | $ | $ | | | $ | $ |
| **Reply Brief** | | | $ | $ | | | $ | $ |
| **Other**\*\* | | | $ | $ | | | $ | $ |
| | | | **TOTAL:** | $ | | | **TOTAL:** | $ |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                    ]

---

*(To Be Completed by the Clerk)*

Date [                    ]        Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk